IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| RYAN AKINS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 1:20-cv-816 (RDA/MSN) |
| v. ) | |
| ) | |
| FAIR ACQUISITIONS, LLC, *et al.*, ) | |
| ) | |
| Defendants. ) | |

## **MEMORANDUM OPINION AND ORDER**

This matter comes before the Court on a Motion to Dismiss the Complaint ("Motion") brought by Defendants Fair Acquisitions, LLC and XCL Titling Trust (collectively, "Defendants"). Dkt. 11. As oral argument would not aid in the decisional process, the matter is ripe for disposition. Accordingly, the Court will decide the Motion on the papers. Fed. R. Civ. P. 78(b); Loc. Civ. R. 7(J). Considering Plaintiff Ryan Akins's Complaint and relevant exhibits, Dkt. 1-2, the Motion, Dkt. 11, Defendants' Memorandum in Support of the Motion, Dkt. 12, Plaintiff's Response in Opposition to the Motion ("Opposition"), Dkt. 15, and Defendants' Reply, Dkt. 16, the Court grants in part and denies in part Defendants' Motion to Dismiss for the following reasons.

### I. BACKGROUND

Ryan Akins, the Plaintiff in this case, is a Virginia resident who leased a vehicle—a 2016 Nissan Altima—from Defendant XCL. Dkt. 1-2, ¶¶ 1, 6. He assumed the lease agreement after an earlier lessee assigned the contract to him. *See* Dkt. 12, 3 n.2. On October 4, 2016, Plaintiff agreed to make 138 weekly payments of $178.26 to Defendant XCL through May 27, 2019. Dkt. 1-2 ¶ 6. In turn, Defendant XCL worked with Defendant Fair Acquisitions, LLC to service

Plaintiff's payments on his leased car. *Id.* ¶ 7.[1] Defendants Fair Acquisitions and XCL are both Delaware companies that conduct substantial business in Virginia. *Id.* ¶¶ 2, 3. Defendant Metro Investigation Recovery Inc. is a Maryland corporation that does the same. *Id.* ¶ 4. As it must at the motion to dismiss stage, this Court accepts all facts alleged within the Complaint as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

According to the Complaint, Plaintiff made all payments on his leased vehicle without incident through April of 2018. Dkt. 1-2 ¶ 8. Then, on May 25, 2018, he asked Defendants to arrange a modified payment agreement. *Id.* ¶ 9. Specifically, Plaintiff asked Defendants to amend his payment terms so that he would be allowed to make his next payment on June 7, 2018. *Id.* Defendants agreed to amend the payments. *Id.*

During this May 25, 2018 exchange, Defendants allegedly represented to Plaintiff that they would not repossess his car, or take any other negative action, if he simply made his next lease payment no later than June 7, 2018. *Id.* ¶ 12. Plaintiff articulated his concern that his car might be repossessed, asking whether he should initiate an immediate payment to avoid that result. *Id.* ¶ 13. In the Complaint, Plaintiff sets forth that "Defendants explicitly acknowledged his concern" and told Plaintiff over the phone, "'yeah, but there is no repossession going on for [Plaintiff's] account[.]'" *Id.* Purportedly, Defendants then reassured Plaintiff that because he had promised to pay this next lease payment, "'he would be fine.'" *Id.* Relying on Defendants' representations, Plaintiff then arranged to make a $763.76 payment on his car lease. *Id.* ¶ 17.

Plaintiff alleges that the new payment agreement, orally negotiated by the parties, served as either a lease modification or as Defendants' new offer. *Id.* ¶¶ 10, 11. If the arrangement was

---

[1] In a one-sentence footnote, the Motion urges complete dismissal of the "erroneously named" Defendant Fair Acquisitions, LLC. *See* Dkt. 12, 1 n.1. This is insufficient to support dismissal in light of the allegations set forth in the Complaint.

a modification to the lease, the parties properly negotiated the amendment because the lease did not expressly require that modifications be made by written agreement. *Id.* ¶ 10. In the alternative, according to Plaintiff's theory, the new payment agreement "constituted a new offer by Defendants to allow" Plaintiff an opportunity "to cure a default by entering to a new lease" for the same car. *Id.* ¶ 11.

On June 6, 2018, things went awry. Plaintiff learned that his vehicle was being repossessed during the time he was meeting with a client. *Id.* ¶ 19. Despite his objections, Defendants repossessed his car. *Id.* The repossession took place the evening before June 7, 2018, the date Plaintiff alleges the parties had agreed would be his deadline for submitting his next lease payment, thereby avoiding repossession or any other adverse consequences. *Id.* ¶ 12. Plaintiff unsuccessfully attempted to speak directly with Defendants about the repossession of his car that night. When he reached Defendants by phone the following morning, they "acknowledged their May 25, 2018 representations and the Payment Agreement modification to the Lease, and admitted" that their agents had "provided incorrect and misleading information[.]" *Id.* ¶ 22. Defendants nonetheless "refused to return the [v]ehicle to" Plaintiff and declined to "make him whole." *Id.*

On May 26, 2020, Plaintiff brought this action in state court. Dkt. 1, 2. On July 20, 2020, Defendants removed the action to this Court. *Id.* In his Complaint, Plaintiff brings six claims against Defendants, alleging that (1) Defendants breached the lease when they repossessed his vehicle prematurely and without authorization or notice; (2) Defendants failed to exercise contractual discretion in good faith by repossessing Plaintiff's vehicle prematurely; (3) Defendants unlawfully converted his vehicle; (4) Defendants violated the Maryland Consumer Protection Act by employing fraudulent means to make false or misleading representations; (5) Defendants

violated the Maryland Commercial Code's provisions governing consumer motor vehicle leasing contracts; and (6) Defendants violated the Maryland Commercial Code when they made misrepresentations regarding the repossession of Plaintiff's vehicle in violation of Md. Code §§ 12-624(c) . Dkt. 1-2 ¶¶ 38-60.

On August 10, 2020, Defendants Fair Acquisitions and XCL moved to dismiss the case pursuant to Federal Rule of Civil Procedure 12(b)(6). Dkt. 11. Plaintiff filed an Opposition on August 24, 2020. Dkt. 15. Defendants then replied on August 31, 2020. Dkt. 16.

## II. STANDARD OF REVIEW

In considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), "'the material allegations of the complaint are taken as admitted,' and 'the complaint is to be liberally construed in favor of plaintiff.'" *Berry v. Gutierrez*, 587 F. Supp. 2d 717, 721 (E.D. Va. 2008) (quoting *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969)). Under Federal Rule of Civil Procedure 8(a)(2), a plaintiff's complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A plaintiff's complaint must also "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'" and the allegations must "raise a right to relief above the speculative level." *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555. A claim is facially plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. A plaintiff must show "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action . . .". *Twombly*, 550 U.S. at 555. Motions to dismiss under Rule 12(b)(6) succeed if "it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999).

4

In addition to this general pleading standard, "fraud-based claims must satisfy Rule 9(b)'s heightened pleading standard." *United States ex rel. Grant v. United Airlines, Inc.*, 912 F.3d 190, 196 (4th Cir. 2018) (citing *United States ex rel. Nathan v. Takeda Pharm. N. Am., Inc.*, 707 F.3d 451, 455-56 (4th Cir. 2013)). "Rule 9(b) requires that 'a party must state with particularity the circumstances constituting fraud or mistake.'" *Id*. (quoting Fed. R. Civ. P. 9(b)). Further, when a plaintiff fails to plead fraud with particularity under Rule 9(b)'s pleading requirements, the omission "is treated as a failure to state a claim under Rule 12(b)(6)." *Harrison v. Westinghouse Savanna River Co.*, 176 F.3d 776, 783 n.5 (4th Cir. 1999).

## III. ANALYSIS

This Court, sitting in diversity,[2] assumes without deciding that Maryland law applies to the causes of action asserted in the Complaint—an assumption the parties appear to share.[3] *See* Dkt. Nos. 12, 5 n.3; 15, 3. For contract claims, "Maryland courts follow the rule of *lex loci contractus*, applying the substantive law where the contract was formed." *Durm v. Am. Honda Fin. Corp.*, No. CIV. WDQ-13-0223, 2013 WL 6490309, at *5 (D. Md. Dec. 9, 2013), at *5 (citing *Allstate Ins. Co. v. Hart*, 327 Md. 526, 611 A.2d 100, 101 (1992)). As for torts, "Maryland applies the rule of *lex loci delicti* to determine the law to apply in tort cases, such as conversion." *Durm*, 2013 WL 6490309, at *5. Following that rule, courts applying Maryland law apply "the law of the state 'where the injury—the last event required to constitute the tort—occurred.'" *Id.* (citing *Lab. Corp. of America v. Hood*, 395 Md. 608, 615 (2006)). The Court notes variations in Virginia law where such differences are relevant to the ultimate choice-of-law analysis.

---

[2] The exercise of diversity jurisdiction is proper as the notice of removal sufficiently alleges facts supporting complete diversity among the parties and the amount-in-controversy requirement. Dkt. 1 ¶¶ 9-19.

[3] The original lease stipulates that any dispute would be governed by the laws of the state in which the dealer was located—in this case, Maryland. *See* Dkt. 1-2, 26.

5

Plaintiff brings six claims for relief. Dkt. 1-2 ¶¶ 24-80. Two of his claims sound in contract, one is a claim for conversion, another arises under the Maryland Consumer Protection Act, and two are claims under the Maryland Commercial Code. *Id.* The Court addresses each claim in turn.

## A. Breach of Contract (Count I)

Plaintiff brings two contract-based claims: one for breach of lease, and one for failure to exercise contractual discretion in good faith.[4] As for Plaintiff's breach of lease claim, under Maryland law, "to state a claim for breach of contract, a plaintiff need only allege the existence of a contractual obligation owed by the defendant to the plaintiff, and a material breach of that obligation by the defendant." *RRC Ne., LLC v. BAA Md., Inc.*, 413 Md. 638, 658 (2010); *see also J.E. Dunn Const. Co. v. S.R.P. Dev. Ltd. P'ship*, 115 F. Supp. 3d 593, 600 (D. Md. 2015). These basic elements aside, Defendants contend Plaintiff has not adequately pleaded a claim for breach of contract, arguing that because he has not pleaded that he completed his performance under the contract, "he is precluded from pursuing a breach of contract claim under both Maryland and Virginia law." Dkt. 12, 6. Plaintiff maintains he has met the pleading requirements for a breach of contract claim at this stage of the proceedings. Dkt. 15, 3.

In this Court's view, Plaintiff has alleged all the law requires for a breach of contract claim to survive a motion to dismiss. Defendants, citing *Collins/Snoops Assocs., Inc. v. CJF, LLC*, 190 Md. App. 146, 161 (2010), mistake the ultimate burden a plaintiff must shoulder to prevail on a contract breach claim for the showing he must make on a Rule 12(b)(6) motion. In *Collins/Snoops*,

---

[4] The parties' briefs dispute whether the facts alleged could support a promissory estoppel theory. *See* Dkt. 15, 6-7; Dkt. 16, 5-6. The Court cannot decide that question on this Rule 12(b)(6) Motion, however, because the Complaint does not contain an independent promissory estoppel claim and there is, therefore, no such claim to sustain or dismiss.

the Maryland appellate court—reviewing a contract-breach verdict following a bench trial—determined that a plaintiff must simply perform all of his own material obligations under the contract to recover for breach of contract. *Id.*

Assessing the merits of party performance is not the task on a motion to dismiss. At this stage, the Court accepts all well-pleaded allegations as true. Indeed, "[w]hether a breach of contract is material is normally a question of fact, unless 'the issue is so clear that it may be decided as a matter of law.'" *Whiting-Turner Contracting Co. v. Capstone Dev. Corp.*, No. CIV. WDQ-12-3730, 2013 WL 5423953, at *8 (D. Md. Sept. 26, 2013) (citing *Barufaldi v. Ocean City Chamber of Commerce, Inc.*, 7 A.3d 643, 656-57 (Md. Ct. Spec. App. 2010)). The analysis does not differ under Virginia law. *See McPike v. Zero-Gravity Holdings, Inc.*, 280 F. Supp. 3d 800, 810–11 (E.D. Va. 2017) (finding that resolving materiality of contract breach on motion to dismiss is "inappropriate") (citing *Shipp v. Connecticut Indem. Co.*, 194 Va. 249, 257 (1952) (holding that whether the breach of a contractual provision is material is a question of fact best left to the jury)). Defendants' other contentions—that Plaintiff was the first party to breach, he failed to provide valid consideration for a new or modified contract, and the oral agreement to modify is barred by the statute of frauds defense—may carry the day on a motion for summary judgment or at trial, but are insufficient to defeat Plaintiff's breach of contract claim on a motion to dismiss.

### B. Covenant of Good Faith and Fair Dealing Claim (Count II)

Next, Plaintiff brings a separate count alleging Defendants breached the implied covenant of good faith and fair dealing when they repossessed his vehicle. Dkt- 12 ¶¶ 30-33. Defendants argue this is not a separate claim under Maryland law and therefore should be dismissed. *See* Dkt. 12, 8. Although Plaintiff acknowledges no independent cause of action is available for alleged

breach of an implied covenant of good faith and fair dealing, he asserts that his claim should not be dismissed because he is entitled to plead this claim in the alternative. *See* Dkt. 15, 5.

The Court concludes that it must dismiss Count II of the Complaint because Plaintiff does not state a claim for relief under Maryland law. While the Court appreciates Plaintiff's ingenuity in its pleadings in this regard, "Maryland courts do not recognize 'an independent cause of action for breach of the implied contractual duty of good faith and fair dealing.'" *White Marlin Open, Inc. v. Heasley*, 262 F. Supp. 3d 228, 256 (D. Md. 2017) (citing *Mount Vernon Properties, LLC v. Branch Banking & Trust Co.*, 170 Md. App. 457, 472 (2006)), *aff'd*, 716 F. App'x 216 (4th Cir. 2018). Breach of the implied duty of good faith and fair dealing is not a standalone claim available to Plaintiff, but is instead "better viewed as an element of another cause of action at law, *e.g.*, breach of contract."[5] *Id.* Accordingly, Plaintiff may pursue this theory as a component of his breach of lease claim, but his separate count alleging Defendants breached the implied covenant of good faith and fair dealing is dismissed with prejudice and without leave to amend because amendment would be futile. *See Weill v. Dominion Res., Inc.*, 875 F. Supp. 331, 340 (E.D. Va. 1994) (citing Fed. R. Civ. P. 15(a)).

### C. Conversion Claim (Count III)

To survive Defendants' Motion to Dismiss, Plaintiff's claim for conversion must satisfy the common law requirements. That standard requires a plaintiff alleging conversion to plead a defendant has exercised a "distinct act of ownership or dominion" over the plaintiff's personal

---

[5] The same result follows under Virginia law because Virginia also "does not recognize an independent cause of action for this claim." *Middle E. Broad. Networks, Inc. v. MBI Glob.*, *LLC*, No. 1:14-cv-01207-GBL, 2015 WL 4571178, at *1 (E.D. Va. July 28, 2015) (granting summary judgment to defendant on implied covenant of good faith and fair dealing claim).

property "in denial of his right or inconsistent with it." *Allied Inv. Corp. v. Jasen*, 354 Md. 547, 560 (1999) (internal quotation marks and citations omitted). Here, Plaintiff alleges he enjoyed a right to possession of the vehicle, which Defendants denied when they repossessed the car, and that Defendants' possession of the vehicle lacked legal justification. Dkt. 1-2 ¶¶ 35-37. On the other hand, Defendants argue the conversion claim fails because Plaintiff lacked any right to possession, that Defendants were not required to provide Plaintiff with advance notice of the repossession, and that his claim is flawed because he did not own the vehicle. Dkt. 12, 9-10.

The Court finds Plaintiff has pleaded facts sufficient to support a claim for conversion. He alleges Defendants exercised a clear act of dominion or control over the vehicle when they repossessed the car and that this act either violated or was inconsistent with his right to possession of the vehicle. Dkt. 1-2 ¶¶ 34-38. That is enough at the pleadings stage to support a claim for conversion under Maryland law. *See Sanders v. Callender*, No. CV DKC 17-1721, 2019 WL 3717868, at *3 (D. Md. Aug. 6, 2019) (noting "a claim for conversion requires: (1) the plaintiff's right to possess the disputed property, and (2) an intentional taking of that property by a person without authority or permission.") (citing *Travel Comm., Inc. v. Pan Am. World Airways, Inc.*, 91 Md. App. 123, 183 (1992)). Also relevant to Plaintiff's claim are his allegations that Defendants repossessed the car in breach of the peace, Dkt. 1-2 ¶¶ 50, 62, 73, 77, and specifically, that they repossessed the car while he was in the middle of a business meeting. *Id.* ¶ 20. The Complaint alleges the repossession humiliated Plaintiff while he met with a professional client, ruining that client relationship. *Id.* ¶ 21.

The fact that Plaintiff did not own his leased car does not necessarily preclude his conversion claim. While analyzing a claim for conversion brought by a lessor in *Donegal Assocs., LLC v. Christie-Scott, LLC*, 248 Md. App. 448, 472 (2020), the court concluded a lessor may

9

repossess property where a lessee has breached a lease that authorizes the remedy of repossession. *Id.* (assessing conversion claim brought by commercial tenant). To state a conversion claim, a plaintiff must assert a continued right to *possession*, not ownership. *See Callender*, 2019 WL 3717868, at *3 ("[A] claim for conversion requires [] the plaintiff's right to possess the disputed property"). Furthermore, conversion claims have proceeded beyond the pleadings stage in Maryland courts where a plaintiff merely leased, rather than owned, the repossessed vehicle in question. *See, e.g.*, *Wallander v. Barnes*, 341 Md. 553, 574-78 (1996); *Lease-A-Car, Inc. v. Thomassen Lincoln Mercury, Inc.*, 36 Md. App. 437, 438-41 (1977). Here, Defendants' argument that Plaintiff retained no right of possession to the vehicle turns on Plaintiff's alleged default—a contested question of fact that cannot be resolved on this Rule 12(b)(6) motion.[6] The Court therefore denies Defendants' motion as to Count III of the Complaint.

D. Maryland Consumer Protection Act Claim (Count IV)

Plaintiff also brings a claim under the Maryland Consumer Protection Act. Dkt. 12, 10-13. That statute prohibits commercial entities from engaging in any "unfair or deceptive trade practice" in "[t]he extension of consumer credit." Md. Code § 13–303. To allege an "unfair or deceptive" trade practice under the law, a plaintiff must first identify "false . . . or misleading oral or written statement[s] . . . or other representations . . . [that have] the capacity, tendency, or effect of deceiving or misleading consumers." *Id.* § 13–301. Second, a consumer bringing a claim under the law must allege he relied on such a misrepresentation. *Lloyd v. Gen. Motors Corp.*, 397 Md. 108, 143 (2007). And third, a plaintiff must allege that any "injury or loss sustained" was "the

---

[6] Virginia law dictates the same result because Virginia's elements for conversion mirror Maryland's. *See Bank of Am., N.A. v. AC Tech., Inc.*, No. 1:09-cv-391-GBL, 2009 WL 10687901, at *4 (E.D. Va. July 22, 2009) (denying motion to dismiss conversion claim) (internal citations omitted).

10

result of" a misrepresentation. *Id.* (citing § 13–408(a)); *see also Bank of Am., N.A. v. Jill P. Mitchell Living Tr.*, 822 F. Supp. 2d 505, 531–32 (D. Md. 2011).

Because Count IV sounds in fraud, Federal Rule of Civil Procedure 9(b) requires that Plaintiff also plead this count with particularity. Plaintiffs must, at a minimum, allege "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *McCauley v. Home Loan Inv. Bank, F.S.B.*, 710 F.3d 551, 559 (4th Cir. 2013). Specifically, a plaintiff is required to identify "'the who, what, when, where, and how of the alleged fraud' before access to the discovery process should be granted." *Murphy v. Capella Educ. Co.*, 589 F. App'x 646, 652 (4th Cir. 2014) (quoting *United States ex rel. Wilson v. Kellogg Brown & Root*, 525 F.3d 370, 379 (4th Cir. 2008)).

Defendants contend Plaintiff's allegations are insubstantial, too generalized under the Maryland Consumer Protection Act, and that the statute does not apply to the facts of this case. *See generally* Dkt Nos. 12; 16. Assessing Plaintiff's allegations, the Court is inclined to find that his allegations, taken together, are substantial enough to withstand a dispositive motion. *Sager v. Hous. Comm'n of Anne Arundel Cty.*, 855 F. Supp. 2d 524, 558 (D. Md. 2012). Under Maryland law, "whether a statement is 'misleading' is judged from the point of view of a reasonable, but unsophisticated consumer" and "must be viewed in the context in which it was made, along with other representations to the consumer." *Id.* (internal quotation marks and citations omitted). A reasonable consumer could believe the combination of Defendants' alleged extension of Plaintiff's next payment period; Defendants' assurances that repossession of Plaintiff's vehicle or other negative action would not occur prior to June 7, 2018; and the comment that Plaintiff "would be fine" without making any payments until that date constituted material misrepresentation. Dkt. 1-2 ¶¶ 12-13.

In addition, Plaintiff "articulate[s] a cognizable injury under the Consumer Protection Act," *Lloyd*, 397 Md. at 143 (2007), because the injuries he alleges are "objectively identifiable": (1) the ruining of a business relationship; (2) lost value of payments; (3) lost income; (4) loss of a purchase option; and (5) expenses associated with obtaining items from the car and replacing the vehicle. Dkt. 1-2 ¶ 53. Moreover, Plaintiff alleges he "suffered an identifiable loss, measured by the amount the consumer spent or lost as a result of his or her reliance on the sellers' misrepresentation[.]" *Lloyd*, 397 Md. at 143. The Complaint contains multiple allegations regarding Plaintiff's reliance on Defendants' alleged misrepresentations. Dkt. 1-2 ¶¶ 17-18, 53. Taking these facts as true at this juncture in the litigation, the Court finds that Plaintiff's allegations in support of his Consumer Protection Act claim generally contain sufficient detail to sustain his claim at this stage of litigation.

That does not end the analysis, however, as the Court must also consider whether Plaintiff sufficiently pleads his fraud claim with particularity as required by Rule 9(b). *See McCauley*, 710 at 559. Critically, the Complaint does not specifically identify "the corporate individuals involved in the allegedly fraudulent conduct." *United States ex rel. Kelly-Creekbaum v. L'Academie De Cuisine, Inc.*, No. CV DKC 17-3525, 2019 WL 3817264, at *6 (D. Md. Aug. 14, 2019). In the Complaint, Plaintiff sets forth that the May 25, 2018 call involved "Defendants" generally, but this falls short of the Rule 9(b) standard. *See* Dkt. 1-2 ¶¶ 9, 11-23, 43-53.

The Court rigidly enforces fraud-pleading requirements because the "clear intent of Rule 9(b) is to eliminate fraud actions in which all the facts are learned through discovery after the complaint is filed." *Harrison*, 176 F.3d at 789. Accordingly, Plaintiff's Consumer Protection Act claim—at least as alleged in the Complaint—fails because it does not meet the more stringent

standard applied to fraud claims. The Court therefore dismisses Count IV without prejudice with leave to amend the Complaint with allegations containing the particularity Rule 9(b) demands.[7]

### E. Maryland Consumer Motor Vehicle Contract Claim (Count V)

Plaintiff also brings two claims under the Maryland Commercial Code. Dkt. 1-2 ¶¶ 54-80. The first of these alleges Defendants violated the Maryland Consumer Motor Vehicle Leasing Contract when they repossessed his vehicle. *Id.* ¶¶ 67-80. Namely, Plaintiff alleges he was injured when Defendants made "false, falsely disparaging, or misleading" statements and representations that had "the capacity, tendency, or effect of deceiving or misleading a consumer or lessee." Md. Code Ann., Com. Law § 14-2003. Dkt. 1-2 ¶ 59. Defendants counter that this statute does not apply to conduct occurring after the origination of a lease and that their statements were neither false nor misleading. Dkt. 12, 13-14.

At the outset, the statute does not compel the narrow interpretation Defendants give it. Section § 14-2003 imposes obligations that arise after the making of an initial lease in two places: in paragraph (b)(1), where the law requires a lessor to "allow a lessee to cure a default by entering into a new lease for the same motor vehicle" with comparable terms, and in paragraph (b)(2)(iii), where the statute mandates that the lease payments under a new contract cannot "exceed the total of scheduled lease payments under the original lease." Md. Code Ann., Com. Law § 14-2003. Neither does the authority Defendants cite direct a different interpretation. *Murphy v. 24th St. Cadillac Corp.*, 353 Md. 480, 486 (1999) states that the statute "comprehensively regulates the leasing of motor vehicles for the protection of lessees." The *Murphy* case casts further doubt that

---

[7] In his Opposition to Defendants' Motion, Plaintiff "requests leave to attach the transcript of the recorded telephone conversation in which Defendants made these misrepresentations." Dkt. 15, 8. As a district court "may properly consider documents that are attached to the complaint," *Turner v. Virginia Dep't of Med. Assistance Servs.*, 301 F. Supp. 3d 637, 642 (E.D. Va. 2018), the Court grants this request along with its grant of leave to file an Amended Complaint.

such "comprehensive" regulation somehow ends the moment parties enter an original lease. *Id*. Indeed, *Murphy* observed that in addition to "requir[ing] lessors of motor vehicles to make certain disclosures at the time leasing arrangements are made[,]" the law also "otherwise regulates the contract between the lessee and lessor." *Id.* A natural construction of the law suggests that it applies to conduct that occurs during the life of a motor vehicle lease.

Defendants further argue their statements "were not false or misleading when considered against the context available to [Plaintiff]." Dkt. 12, 14. This contention is built on the premise that Plaintiff had already defaulted on the loan, a fact Plaintiff disputes. Fundamentally, this disagreement is the sort the Court is powerless to resolve on a Rule 12(b)(6) motion. *See, e.g.*, *Butler v. United States*, 702 F.3d 749, 752 (4th Cir. 2012) ("[I]mportantly, [a Rule 12(b)(6) motion] does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.") (quoting *Edwards*, 178 F.3d at 243) (alteration in original); *Ridenour v. Multi-Color Corp.*, 147 F. Supp. 3d 452, 455 (E.D. Va. 2015) (noting a district court must "tak[e] care to avoid any invitation to resolve factual disputes at the pleading stage") (citing *Kensington Volunteer Fire Dep't v. Montgomery Cty.*, 684 F.3d 462, 467 (4th Cir. 2012)). The Court will therefore deny Defendants' Motion as to Count V of the Complaint.

### F. Maryland Commercial Code Claim (Count VI)

Lastly, Defendants seek to dismiss Plaintiff's Maryland Commercial Code claim alleging the parties' new payment agreement was a new lease that contained less favorable terms than the original lease in violation of Md. Code Ann., Com. Law § 14-2003(b). Plaintiff alleges the parties mutually modified the lease when they entered the May 25, 2018 payment agreement. Dkt. 1-2 ¶

72.[8] He further alleges Defendants "repudiated and failed to deliver the Vehicle in conformity to the Lease[,]" violating Md. Code § 12-624(c) by repossessing the car prematurely, in breach of the peace, and without notice. *Id.* ¶ 77. For their part, Defendants argue the new payment agreement did not modify the lease, or if it did constitute a new lease agreement, the modification did not include less favorable or more restrictive terms. Dkt. 12, 15-16.

Plaintiff has plausibly alleged the parties' May 25, 2018 payment agreement constituted a mutual modification to the original lease. *See* Dkt. 1-2 ¶¶ 67-75. Defendants do not deny that the May 25, 2018 exchange occurred, but instead dispute Plaintiff's characterization of the conversation. *See* Dkt. 12, 14-15. The facts alleged in the Complaint "both inform and constrain this Court's review of a motion to dismiss field under Federal Rule of Civil Procedure 12(b)(6)." *Humana Ins. Co. v. Paris Blank LLP*, 187 F. Supp. 3d 676, 678 (E.D. Va. 2016). Viewing the Complaint in the light most favorable to Plaintiff, the Court finds Plaintiff's claim that a modification to the lease occurred on May 25, 2018 is facially plausible. Similarly, Plaintiff has adequately pleaded facts in support of his theory that the new lease contained less favorable terms than the original lease, as is required to state a claim under Md. Code Ann., Com. Law § 14-2003(b). Dkt. 1-2 ¶¶ 76-80. He alleges the new agreement "induce[d]" him "to make additional payments[,]" *id.* ¶ 15, and that the new agreement therefore included less favorable terms than the original lease. *Id.* ¶ 76; Dkt. 15, 11 n.4.

Plaintiff also cites other alleged violations of the Maryland Commercial Code within Count VI. The crux of Plaintiff's claim under Md. Code § 12-624 is that his lease agreement falls within

---

[8] Plaintiff pleads, in the alternative, an allegation echoing the theory outlined in Count V: that Defendants violated Md. Code § 14-2003(b) when they offered Plaintiff a chance to cure a default by signing a new lease with material provisions less favorable than the original lease. Dkt. 1-2 ¶ 76.

the definition of an installment sale agreement under Maryland law, which provides that goods may only be repossessed by self-help when the buyer is in default and defendants act without use of force and therefore do not breach the peace. Md. Code § 12-624(a)-(b), (d).[9] Plaintiff also alleges a violation of Md. Code § 2A-108, which concerns unconscionability in lease provisions. Dkt. 1-2 ¶ 78. But that section grants appropriate relief upon a judicial finding that unconscionability induced the creation of a lease agreement "or that unconscionable conduct has occurred in the collection of a claim arising from a lease contract." Md. Code Ann., Com. Law § 2A-108(1)-(2), (4). Because there is no such finding at the pleadings stage, Plaintiff's argument is premature. For the reasons outlined above, however, the Court allows Count VI to proceed and therefore declines to further address these alternative theories of liability under the Maryland Commercial Code.

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motion is GRANTED with respect to Counts II and IV. Plaintiff's claim alleging breach of the implied covenant of good faith and fair dealing fails to state a claim upon which relief may be granted and is therefore DISMISSED WITH PREJUDICE. Plaintiff's claim under the Maryland Consumer Protection Act is DISMISSED WITHOUT PREJUDICE with leave to file an Amended Complaint consistent with this Memorandum Opinion and Order within 21 days. If no amendment is filed, the dismissal will become with prejudice. Defendants' Motion is DENIED as to Counts I, III, V, and VI.

It is SO ORDERED.

Alexandria, Virginia
March 26, 2021

/s/
Rossie D. Alston, Jr.
United States District Judge

---

[9] Maryland law creates an exception to this general rule for goods repossessed by law enforcement, an exception not at issue in this case based on the facts alleged. *See* Md. Code. § 12-624.